**Jacqueline Bookout WADE, Amanda Bookout, Krystle Bookout, Penny Stine, Brittney Stine, and Jessica Stine, Appellants–Plaintiffs,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, and The Board of Commissioners of Tippecanoe County, Indiana, Appellees–Defendants.**

No. 79A02–9708–CV–504.

Court of Appeals of Indiana.

April 20, 1998.

Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, Kokomo, Frederick N. Hadley, Indianapolis, Jay T. Seeger, Gambs, Mucker, Bauman & Seeger, Lafayette, for Appellants–Plaintiffs.

Lynn E. Arnold, Peter J. Agostino, Hunt & Suedhoff L.L.P., South Bend, for Appellees–Defendants.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Plaintiffs, Jacqueline Bookout Wade, Amanda Bookout, Krystle Bookout, Penny Stine, Brittney Stine, and Jessica Stine, (two mothers each with two daughters), all of whom will be referred to collectively as ("Wade"), brought the present lawsuit against Appellee–Defendant, Board of Commissioners of Tippecanoe County, Indiana, ("County"), and Co–Defendant, Norfolk & Western Railway Company, ("Railroad"), for the serious personal injuries suffered by the Wade plaintiffs when a train struck their car at a railroad crossing. The trial court awarded County summary judgment upon its finding that County was immune under the Indiana Tort Claims Act, ("ITCA"), IND.CODE § 34–4–16.5–3. This appeal, which involves only the summary judgment in favor of County, followed. We affirm.

### Issue

Wade raises three issues, which we restate and consolidate as the following dispositive issue:

whether County is immune from Wade's tort claim under the Indiana Tort Claims Act.

### Facts

The designated evidence most favorable to the nonmovant Wade reveals that, in 1994, the Wade plaintiffs were riding in a car which was struck by the train operated by Railroad. While all of the Wade plaintiffs were injured, one child, Krystle Bookout, suffered especially serious permanent injuries which rendered her paraplegic.

The gravel road Wade was traveling at the time of the accident had been approved and opened by the County in 1861. No substantial changes had been made to the road since that time. The railroad crossing in question was ultrahazardous due to the convergence of several factors, including: 1) the steep hump in the road where the tracks cross; 2) the sharp angle (approximately twenty degrees) at which the road crossed the tracks; 3) the angle and curve of the railroad tracks approaching the intersection which required motorists to look out their back window to see if a train was coming; and 4) trees which obscured the view of a train until it rounds the curve approaching the railroad crossing. Wade argues that County was negligent in failing to either 1) realign the angle of the intersection to at least 70°, or 2) close the crossing. (Appellant's brief at 9, 27; Deposition of Professor William D. Berg R. 644–856).[1]

The uncontradicted affidavit and deposition testimony of the Executive Director of the County Highway Department established that the County budgets approximately $50,000.00 each year for railroad crossing improvement projects. The County periodically inspects the railroad crossings for signage,

---

1. Wade argues that the trial court erred by rejecting the testimony of its expert, Professor Berg. However, as will be discussed below, we are conducting a de novo review of these summary judgment proceedings without any presumption in favor of the validity of the trial court's decision. As such, we have considered all designated materials in the light most favorable to Wade. Therefore, any error in the trial court's consideration of the designated materials was harmless.

condition, sight distance, and other safety-related problems. The County keeps records of its inspections. Also, the Indiana Department of Transportation, ("INDOT"), provides the County with reports regarding its assessment of needed improvements to all the railroad crossings in the County. The County reviews the records provided by INDOT. Although all contemplated projects must be initiated locally, certain projects are eligible for federal funding which must be coordinated through INDOT. The County will pursue only those projects which are eligible for federal funding and coordinated through INDOT. Finally, the County Board of Commissioners must authorize all individual projects on a line item basis in the budget.

### Discussion and Decision

#### Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Hermann v. Yater*, 631 N.E.2d 511, 513 (Ind.Ct.App.1994). The burden is on the moving party to show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The reviewing court faces the same issues that were before the trial court and must carefully scrutinize the trial court's determination to assure that the non-prevailing party was not improperly prevented from having his day in court. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Stevenson v. Hamilton Mutual Insurance Company*, 672 N.E.2d 467, 471 (Ind.Ct.App.1996), *trans. denied.* Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. *Id.* We review the designated materials in the light most favorable to the non-movant without determining weight or credibility. *Richter v. Klink Trucking, Inc.*, 599 N.E.2d 223, 225 (Ind.Ct.App.1992), *trans. denied.* Once the movant for summary judgment has established that no genuine issue of material fact

exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. *Stevenson*, 672 N.E.2d at 471. The appellate court is not limited to reviewing the trial court's reasons for granting summary judgment, but will affirm a grant of summary judgment if it is sustainable on any theory or basis found in the record. *Stephenson*, 596 N.E.2d at 1371.

 Ordinarily, a trial court's decision on a motion for summary judgment enters the process of appellate review clothed with a presumption of validity, and the party appealing from the grant of summary judgment must persuade the appellate tribunal that the judgment was erroneous. *Id.* However, in the present case, Wade points out that the trial court erred in its finding number 35 which reads as follows:

> Plaintiffs have failed to prove that Tippecanoe did not engage in a policy-oriented, decision making process in maintaining railroad crossings within the county.

As will be discussed below, a county seeking immunity has the burden of proving that its conduct falls within an exception set forth in the ITCA. *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429, 438 (Ind.Ct.App. 1996), *trans. denied.* However, while the trial court's entry of specific findings in summary judgment proceedings may aid our review by providing us with a statement of reasons for the decision, such findings serve no other purpose and we must nevertheless base our decision upon the Ind.Trial Rule 56(C) materials properly designated to the trial court. *Dague v. Fort Wayne Newspapers, Inc.*, 647 N.E.2d 1138, 1140 (Ind.Ct. App.1995), *trans. denied.*

Based on the error in the finding entered in the present case, we will review the County's motion for summary judgment de novo, stripped of any presumption in favor of its correctness. *See Nelson v. Jimison*, 634 N.E.2d 509, 511 n. 1 (Ind.Ct.App.1994) (review of summary judgment proceedings would be performed de novo without any presumption in favor of the correctness of the trial court's determination due to the

change in the law since the trial court's entry of summary judgment). As we have conducted a de novo review of the designated summary judgment materials, the error in the trial court's finding is harmless.

### Governmental Immunity

■ The Indiana Tort Claims Act, IND. CODE § 34–4–16.5–3, provides, in pertinent part, as follows:

A governmental entity ... is not liable if a loss results from:

. . . .

(6) the performance of a discretionary function; . . . .

. . . .

(17) design of a highway ... if the claimed loss occurs at least twenty (20) years after the public highway was designed or substantially redesigned; except that this subdivision shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition; . . . .

Governmental entities, including counties, are subject to liability for torts unless one of the exceptions in the ITCA applies. *Lake County*, 671 N.E.2d at 439. As noted above, a county which seeks immunity has the burden of proving that its conduct falls within one of the exceptions set forth in the ITCA. *Id.* at 438. We narrowly construe governmental immunity against a claimant's right to bring suit. *Id.* at 439.

The case of *Voit v. Allen County*, 634 N.E.2d 767 (Ind.Ct.App.1994), *trans. denied*, is similar to the case at bar in that the allegedly dangerous county road had been originally designed and built more than twenty years before the accident. *Id.* at 769. Thus, the County was immune with respect to any alleged defects in the design of the road under subsection 16 (now subsection 17 as set out above) of the ITCA. *Id.* However, we held that plaintiff's claim that the County was negligent in failing to update, improve, or modernize the roadway was not barred by that subsection. *Id.* Nevertheless, we held that these allegations of negligence directly implicated governmental dis-

cretionary function immunity under IND. CODE § 34–4–16.5–3(6). Accordingly, we analyze the present case in terms of subsection 6 immunity.

■ The policy underlying discretionary immunity is the fundamental idea that certain kinds of executive branch decisions should not be subject to judicial review. *Peavler v. Monroe County Board of Commissioners*, 528 N.E.2d 40, 44 (Ind.1988). The separation of powers doctrine forecloses the judiciary from reviewing political, social, and economic actions within the province of the coordinate branches of government. *Id.* Thus, discretionary function immunity promotes a policy of preventing tort actions from becoming a vehicle for judicial interference with the decision-making authority properly exercised by the other branches of government. *Id.* Also, governmental immunity for discretionary functions avoids inhibiting the effective and efficient performance of governmental functions. *Id.* Tort immunity for basic planning and policy-making functions is necessary to avoid the chilling effect on the ability of government to deal effectively with difficult policy issues confronted on a daily basis. *Id.*

■ Whether a particular governmental act is immune as a discretionary function is a question of law for the court to decide, although the question may require extended factual development. *Lake County*, 671 N.E.2d at 439. In determining whether governmental acts are discretionary under the ITCA, Indiana applies the "planning-operational" test. *Peavler*, 528 N.E.2d at 46. Planning functions are discretionary and are therefore shielded by immunity, while operational functions are not. *Id.* at 45. Planning functions involve the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. *Id.* Governmental decisions about policy formation which involve assessment of competing priorities, a weighing of budgetary considerations, or the allocation of scarce resources are also planning activities. *Id.* On the other hand, "operational" functions involve decisions regarding the execution or implementation of policy which has previously been formulated. *Greathouse v.*

*Armstrong,* 616 N.E.2d 364, 366–67 (Ind. 1993).

 In order to establish immunity for a discretionary act, a County must prove that the challenged act or omission was a policy decision made by consciously balancing risks and benefits. *Id.* at 367. This proof may ordinarily take the form of meeting minutes, testimony of County Council members regarding the decision-making process involved, or studies which show that the allocation of resources were evaluated and the Council had made an affirmative policy decision. *Peavler,* 528 N.E.2d at 48. In the case of omissions, as in the case at bar, a conscious balancing may be demonstrated by evidence showing that the County considered improvements of the general type alleged in plaintiffs' complaint. *Voit,* 634 N.E.2d at 770. However, there is no need for the County to demonstrate that it considered and rejected the specific improvements alleged to have been neglected. *Id.*

 As noted earlier, the *Voit* case is similar to the case at bar. The *Voit* plaintiffs asserted that the county road was not reasonably safe because the county had failed to update the design to accommodate modern safety technology and to accommodate the increase in traffic over the years. *Id.* at 769. Plaintiff's expert presented evidence on what type of improvements should have been made to abate the current road hazards. *Id.* (footnote 2). We held that summary judgment was appropriately entered in favor of the county. There, the record read as follows:

> [D]efendants engage in a systematic process for determining what improvements will be made to highways in Allen County. First, the Director of Transportation Planning for Local Governments makes recommendations for highway improvements to the Urban Transportation Advisory Board (UTAB). The UTAB does traffic counts within its survey area, keeps track of all accidents, citizen complaints, and other

safety problems, and then makes recommendations in the form of a list of projects to the Board of Commissioners of Allen County (Board). The UTAB does not make negative recommendations. In addition to the UTAB, the Director of the Allen County Highway Department is also empowered to make recommendations on improvement projects to the Board. The Board then makes the ultimate decision on whether to accept or reject proposed improvements. When making these decisions, the Board considers written recommendations, the changed conditions of county roads, and the allocation of available resources. The Board prioritizes recommended projects.

In this case, the UTAB concluded that traffic projections did not show a need to widen or improve Adams Center Road. There were also no citizen complaints. The UTAB therefore made no recommendations for improvements concerning Adams Center Road. Because no recommendation was made, the Board did not specifically consider possible improvements. As we have noted above, however, there is no need for the Board to have specifically considered and rejected improvements to Adams Center Road. It was sufficient to demonstrate that they consciously engaged in decision making regarding the general type of improvements alleged in plaintiff's complaint. That has been more than adequately demonstrated here. We therefore affirm the trial court's grant of partial summary judgment on this basis.

*Id.* at 770–71.

 Wade points out that the County is under the erroneous impression that it is powerless to implement improvements without the authorization of INDOT, (R. 54), by correctly citing IND.CODE § 8–6–7.7–4(c) for the proposition that the County does indeed have authority to close dangerous railroad crossings without the approval of INDOT.[2]

**2.** Indiana Code Section 8–6–7.7–5(c) reads as follows:

> The authority vested in [INDOT] to order the installation, replacement, relocation, modernization, or improvement of automatic warning

signals and the closing of grade crossings does not preclude the signal work or closing being performed by contract between a railroad and the governmental agency controlling the public way. If a mutually agreed upon contract for

Accordingly, Wade reasons, the County is not entitled to immunity because it has abdicated its responsibility to ensure that roads and railway crossings are maintained in a reasonably safe manner by delegating this decision making process to the Railroad and INDOT. *See Shand Mining, Inc. v. Clay County Board of Commissioners,* 671 N.E.2d 477, 481 (Ind.Ct.App.1996) (county is not relieved of its duty to properly maintain highway by delegating the responsibility to an independent contractor), *trans. denied; Carroll v. Jobe,* 638 N.E.2d 467, 469 (Ind.Ct.App. 1994) (city cannot immunize itself from liability by delegating responsibility to repair sidewalks to its residents), *trans. denied.*

Additionally, Wade reasons, the County is not entitled to immunity because it only pursues the improvements that INDOT will approve, and therefore does not engage in a policy oriented decision-making process, but merely responds in a reactive manner. *See Town of Highland v. Zerkel,* 659 N.E.2d 1113 (Ind.Ct.App.1995), *trans. denied.* In *Zerkel,* the municipality would only attend to defective sidewalks upon receiving a complaint from a concerned citizen. *Id.* at 1119. We held that this purely reactive policy required no deliberation, and thus, did not amount to a policy oriented decision-making process immune from tort liability. *Id.*

In the present case, the County has not delegated its responsibility to maintain its highways and railroad crossings simply because it declines to independently exercise its authority to implement improvements and pursue only those improvements which are approved by INDOT. Nor is the County's approach a purely reactive policy. As discussed above, the County allocates money in its budget for the improvement of railroad crossings. The County Highway Department periodically inspects, and makes records, regarding its railroad crossings for signage, condition, sight distance, and other safety-related problems. The County reviews the records provided by INDOT regarding its assessment of needed improvements to the railroad crossings in

the County. Then, in coordination with INDOT, the County pursues those improvements which are eligible for federal funding. These projects coordinated through INDOT must be initiated at the local level. Once approval by INDOT is obtained, the proposed improvements are submitted to the Board of Commissioners to determine whether County funds are to be allocated for the proposed improvements on a line item basis.

We hold that the County's policy of pursuing the improvements approved and coordinated through INDOT is the type of policy oriented decision-making process entitled to tort immunity under subsection 6 of the ITCA. It is not our role to judge the wisdom of the County's policy, as that judgment is left to the political process. *Highland,* 659 N.E.2d at 1119. Therefore, we conclude that County has carried its burden of establishing its entitlement to summary judgment.

Affirmed.

GARRARD and DARDEN, JJ., concur.

---

action has been made, no petition to [INDOT] is required, and if a contract is agreed upon after [INDOT] has assumed jurisdiction,. [IN-

DOT] may dismiss the proceeding upon the motion of a party.