**Jeffery L. HILAND, Administrator of the Estate of AUBRA J. HILAND, deceased, Appellant–Plaintiff,**

v.

**STATE of Indiana and Indiana Department of Transportation, Appellees–Defendants.**

No. 36A04–0705–CV–286.

Court of Appeals of Indiana.

Jan. 23, 2008.

---

E. Paige Freitag, Bauer & Densford, William C. Lloyd, Lloyd Law Office, Bloomington, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

This appeal stems from a fatal car accident that occurred when a vehicle in which eighteen-year-old Aubra Hiland was a passenger left the roadway in Jackson County, overturned on a steep slope, landed in a ditch, and filled with water, killing Aubra and the driver of the vehicle. Aubra's Estate sued the State for wrongful death and the State sought summary judgment, arguing that it was immune from liability pursuant to the Indiana Tort Claims Act (ITCA).[1] The trial court agreed and granted summary judgment in the State's favor.

Appellant-plaintiff Jeffery L. Hiland, Administrator of the Estate of Aubra J. Hiland, deceased (the Estate), appeals the trial court's order granting summary judgment in favor of appellees-defendants State of Indiana and Indiana Department of Transportation (collectively, INDOT) on the Estate's wrongful death action. Specifically, the Estate contends that (1) INDOT is not immune under the ITCA based on twenty-year design immunity or the temporary condition of a public thoroughfare that results from weather, and (2) there is a genuine issue of material fact as to whether INDOT had constructive notice of the dangerous conditions at the site of the accident.

Although the ITCA grants the State immunity from claims based on defects in roadway designs when the design or redesign occurred over twenty years prior to the accident, the State still has a duty to provide reasonably safe public roadways. We find—and the State conceded as much at oral argument—that whether the roadway at issue was in a reasonably safe condition at the time of Aubra's accident is a question of fact that must be answered by a factfinder. Thus, we conclude that the trial court erroneously granted summary judgment in the State's favor and remand for trial.

### FACTS[2]

On February 7, 2004, at approximately 9:00 p.m., Aubra was riding in the front

---

1. Ind.Code § 34–13–3–1 et seq.

2. We heard oral argument on January 9, 2008, in Indianapolis. We thank counsel for their excellent written and oral presentations.

passenger seat of a vehicle being driven by twenty-two-year-old Douglas Jeffries. Then-nineteen-year-old Lisa Banich was a passenger in the vehicle's rear seat. It was dark and there was some ice on the surface of the road. Jeffries' vehicle was traveling southbound on State Road 250 in Jackson County and, upon entering a sharp ninety-degree curve, the vehicle left the road, reached a steep downward slope, overturned, and landed in a ditch filled with water. All three passengers were trapped inside the vehicle. Aubra and Jeffries drowned; Banich survived. Jackson County Sheriff's Deputy Charles Foster was dispatched to the scene, and he determined that driver speed and roadway surface conditions were the causes of the accident. Banich does not recall any specific details about the accident.

Eastbound traffic on State Road 250 makes a ninety-degree turn to the south (or right) approximately one-half mile north of a second ninety-degree turn to the east (or left). At the time of the accident, traffic on State Road 250 at the second curve—the location of the accident—was not controlled by a stop sign. Before the second curve, there was a "Turn" sign with a fifteen-mile-per-hour advisory and a "Large Arrow" sign placed on the right side of the roadway and pointing to the left. *Id.* at 100, 272. At the location of the second curve, both sides of State Road 250 drop off onto a steep slope, and two corrugated metal drainage pipes carry ditch flow underneath the road. The ditch, however, frequently fills with water, and INDOT has often used "High Water" signs in this area of the road. *Id.* at 152–53, 271, 277.

INDOT acquired State Road 250 from the county in 1935. After the road became a part of the state highway system and before the accident in this case, INDOT made various improvements to the road, including resurfacing, lane and boundary markings, roadside traffic signage, and general maintenance including filling potholes and working on the shoulder area. Before the accident, INDOT had made no changes to any of the following road features in the relevant vicinity: the second ninety-degree curve, the drainage culverts, the right-of-way, or the general pavement configuration or shoulder area. State Road 250 is a "non-engineered" road, which means that it does not meet current INDOT standards or design criteria. *Id.* at 43–44.

Before the accident, Michael Hoffman, District Traffic Engineer for the Seymour District of INDOT, had personally driven the relevant section of State Road 250 "a hundred times." *Id.* at 45. Seymour District Operations Engineer Terry Burns was familiar with this section of the road because his job required that he drive all roads in the district at least once every year. *Id.* at 86. James Ude, INDOT Planning and Programming Director, drove the roads in the Seymour District as part of his job duties and had driven by the accident site twenty to thirty times in the ten years prior to the accident. Between June 28, 1999, and February 7, 2004, the date of the accident, INDOT personnel were in the vicinity on 288 days to put up or take down "High Water" signs. *Id.* at 152–53, 277.

It is undisputed that State Road 250 and the twenty-foot right-of-way on each side of the center line of the road are property of and subject to the jurisdiction and control of INDOT. The two metal drainage culverts that allow for ditch flow underneath the road are within INDOT's right-of-way.

On August 18, 2005, the Estate filed a complaint against INDOT, seeking damages for Aubra's wrongful death. In relevant part, the complaint alleged that IN-

DOT was negligent in performing its duty to maintain State Road 250 in a reasonably safe manner and that its negligence was the proximate cause of Aubra's death. Among other things, INDOT asserted an affirmative defense that it is immune from suit pursuant to the ITCA.

On January 31, 2007, INDOT moved for summary judgment, arguing that it is immune pursuant to two sections of the ITCA[3] and that it had no duty to maintain State Road 250 because it lacked constructive notice of the dangerous conditions. Following briefing and a hearing, the trial court granted INDOT's motion for summary judgment on April 26, 2007, because it concluded that INDOT is "immune from prosecution under Indiana law." *Id.* at 6. The trial court did not explain which section of the ITCA rendered INDOT immune from prosecution. The Estate now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); see also Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to

what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

### II. Twenty–Year Design Immunity

Pursuant to the ITCA, governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions applies. *State v. Livengood,* 688 N.E.2d 189, 192 (Ind.Ct.App.1997). Thus, the ITCA "recognizes that state and local governments may have tort responsibility for damages flowing from negligence, but grants immunity for that negligence under certain specified circumstances." *Hochstetler v. Elkhart County Highway Dep't,* 868 N.E.2d 425, 426 (Ind.2007). The entity seeking immunity bears the burden of proving that its conduct falls within one of the exceptions to the general rule of liability. *Id.* Because the ITCA is in derogation of the common law, it is narrowly construed against the grant of immunity. *Id.* Whether a governmental entity is immune from liability is a question of law for the courts. *Id.*

The parties focus their arguments on whether INDOT is immune from liability pursuant to Indiana Code section 34–13–3–3(18) (subsection (18)),[4] which provides as follows:

---

**3.** I.C. §§ 34–13–3–3(3),–3(18).

**4.** At oral argument, the Estate argued that the State is required to prove that there was "de-

sign conduct," or a "design decision" made by the original people who designed the highway to qualify for twenty-year design immunity. We cannot agree. Nothing in subsection

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:

\* \* \*

(18) Design of a highway (as defined in IC 9–13–2–73), toll road project (as defined in IC 8–15–2–4(4)), tollway (as defined in IC 8–15–3–7), or project (as defined in IC 8–15.7–2–14) if the claimed loss occurs at least twenty (20) years after the public highway, toll road project, tollway, or project was designed or substantially redesigned; *except that this subdivision shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition.*

(Emphasis added). The Estate insists that it is not seeking to hold INDOT liable for defects in the original 1930s-era design.[5] Instead, it argues that INDOT breached its duty to provide and maintain public highways in a reasonably safe condition.

The parties direct our attention to a number of cases interpreting what it means to "maintain" a public highway in a reasonably safe condition. *See Harkness v. Hall*, 684 N.E.2d 1156 (Ind.Ct.App.1997) (holding that twenty-year design immunity does not automatically apply whenever a loss occurs involving a highway that was designed twenty years prior to the loss and that what is now subsection (18) "does not alter the continuing duty of [governmental entities] to keep [their] roadways in a reasonably safe condition for travel"); *Voit v. Allen County*, 634 N.E.2d 767, 768 (Ind.Ct.App.1994) (holding that "[t]o the extent that plaintiffs seek improvements to the current design and do not allege defects in the original 1962 design, we agree that [subsection (18) ] is not applicable and will not serve as a basis for granting immunity in this case").

We find, however, that the portion of the statute requiring INDOT to "provide" public highways in reasonably safe condition is more helpful. "Provide" means

---

(18) suggests that the State is required to make such a showing, and it would be a heavy burden indeed to have to produce, for example, the Jackson County Commissioners' meeting minutes from a hypothetical meeting in 1908 in which the road design was voted on.

There is, however, a type of governmental immunity for which the State does have to make such a showing. Indiana Code section 34–13–3–3(7) (subsection (7)) provides that a governmental entity is not liable if a loss results from "[t]he performance of a discretionary function...." This court has explained that "a governmental entity will not be held liable for negligence arising from *decisions* which are made at a planning level, as opposed to an operational level." *Lee v. State*, 682 N.E.2d 576, 578 (Ind.Ct.App.1997) (emphasis added). Specifically,

if the decision of the governmental entity was a 'planning' activity, that is a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and immune under [subsection (7) ].

*Id.* Here, therefore, if the State were seeking the protection of discretionary function immunity, it *would* have the burden to prove that decisions were made and that there was, in the words of the Estate's attorney, "design conduct." But as the Estate points out forcefully in its brief, INDOT has never argued that it is entitled to discretionary function immunity. We cannot conclude, therefore, that INDOT is required to produce evidence of decisions that were made in the design and planning of this road.

**5.** The record does not reveal the precise year in which the roadway was designed. Instead, it merely reveals that the State acquired the road in approximately 1935.

"[e]quip or fit out with what is necessary for a certain purpose; furnish or supply with something." *The New Shorter Oxford English Dictionary* 2393 (1993). Thus, although the legislature has seen fit to bestow twenty-year design immunity upon governmental entities, it also—in the same statute—required that, notwithstanding the immunity, the governmental entity at issue is required to ensure that its public roadways are reasonably safe.

Construing these two portions of the statute simultaneously, we find that the government is not required to ensure that roads that were designed or redesigned twenty years prior to the loss meet current safety standards. It is not required to redesign roads in an effort to incorporate ever-evolving technology. In other words, the government is not required to provide the *safest* roads. It is, however, required to provide *reasonably safe* roads. At the very least, that minimum standard must be met, even with respect to roads that are decades, if not centuries, old. It is apparent, however, that whether a particular road was in a reasonably safe condition at the time of a particular accident is a question of fact best decided by a factfinder—a point conceded by INDOT at oral argument. Ultimately, therefore, a case such as this one, which turns on an inquiry into whether the government provided a roadway in a reasonably safe condition at the time of the accident, is not appropriate for disposition by summary judgment.

Therefore, we remand this matter for trial. We caution the trier of fact, however, that INDOT was not required to redesign or improve State Road 250 to a point at which it met 2004 safety standards. It was not required to straighten the road or to provide the "best" or "safest" road. Instead, what the factfinder must determine is whether State Road 250 was in a reasonably safe condition at the time of Aubra's accident. If it was, then INDOT fulfilled its statutory duty. If it was not, then INDOT may be held liable if the Estate proves the other elements of its claim.

The judgment of the trial court is reversed and remanded for trial.[6]

DARDEN, J., and BRADFORD, J., concur.

---

**6.** Inasmuch as we find an issue of material fact regarding the condition of the roadway at the time of the accident such that summary judgment is improper, we need not consider the Estate's other arguments. Briefly, however, we note that INDOT did not respond to the Estate's argument that it is not entitled to immunity based on the temporary condition of a public thoroughfare. I.C. § 34-13-3-3(3). Regardless, that issue similarly turns on a question of fact, namely, what proximately caused Aubra's death—the weather or some other factor. *See Bd. of Comm'rs of Steuben County v. Angulo*, 655 N.E.2d 512, 513 (Ind. Ct.App.1995) (holding that the relevant inquiry is whether the loss was caused by weather or another factor); *see also City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind.2003) (holding that proximate cause has two aspects, causation in fact and scope of liability, both of which are factual questions). Thus, summary judgment on this basis would also have been improper.

Finally, the Estate argues that whether INDOT had constructive notice of the allegedly dangerous condition of State Road 250 is a question of fact rendering the case improper for summary judgment. We agree, and INDOT conceded at oral argument that its constructive notice or lack thereof is, indeed, a question of fact such that summary judgment was improper on this basis.