**Saundra SMITHSON and Clyde Smithson, Appellants,**

v.

**HOWARD REGIONAL HEALTH SYSTEM, Appellee.**

No. 34A02–1001–CT–73.

Court of Appeals of Indiana.

June 29, 2010.

Publication Ordered Aug. 2, 2010.

Daniel J. Harrigan, Bayliff, Harrigan, Cord, Maugans & Cox, P.C., Kokomo, IN, Attorney for Appellants.

Kirk R. Jocham, Hall, Render, Killian, Heath & Lyman, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.[1]

### Case Summary

Saundra and Clyde Smithson appeal the entry of summary judgment in favor of Howard Regional Health System ("Howard Regional"). We reverse and remand.

### Issue

 The Smithsons raise multiple issues on appeal, which we consolidate and restate as whether the trial court erred in concluding that Howard Regional was immune from liability under the Indiana Tort Claim Act ("Act") for a loss resulting from the temporary weather condition of its parking lot.[2]

### Facts and Procedural History

The following are the facts most favorable to the Smithsons, the non-movants, per the standard of review. At approximately 8:30 a.m. on Monday, December 12, 2005,[3] the Smithsons arrived at Howard Regional for a scheduled appointment. They parked in the Indiana Surgery Center parking lot.

The [Smithsons] parked their vehicle in the designated parking lot, *a few rows from the entry to the hospital.* [They] were walking in the lot toward the door when Saundra slipped on a patch of black ice that had not been treated with sand or salt. Saundra fell to the ground[, breaking her pelvis]. Clyde also slipped and almost fell on top of her.

Appellee Appendix at 5 (emphasis added); Appellant Appendix at 11. In an employee incident report, the condition in the parking lot was described as a "glaze of ice." Appellant App. at 111. Howard Regional acknowledged the following:

Prior to the incident in question, no signs, barriers, cones or other devices warning of ice in the parking lot were placed in the area. . . .

. . .

The lot in which the Plaintiff allegedly fell was cleared of snow/plowed and the walks and steps salted after 12:00 a.m. on December 10, 2005 due to snow on the Howard Regional Health System main campus parking lots.

Appellee App. at 25, 27.

In the four days before the Monday morning incident, Kokomo had received significant snowfall, as well as melting over the weekend. A meteorologist submitted

---

1. This decision represents the two thousandth majority opinion authored by Judge Bailey.

2. The Smithsons also argue that Howard Regional waived its immunity defense under the Act by failing to plead it. If an affirmative defense is not specifically pled, it is waived. Ind. Trial Rule 8(C); *Willis v. Westerfield,* 839 N.E.2d 1179, 1185 (Ind.2006). However, "a plaintiff must affirmatively show prejudice to his case before [a belatedly raised affirmative defense] can be rejected." *City of S. Bend v. Dollahan,* 918 N.E.2d 343, 349–50 (Ind.Ct. App.2009) (allowing city to assert governmen-

tal immunity defense first raised, as here, in its motion for summary judgment), *trans. denied.*

Howard Regional asserted governmental immunity in its motion for summary judgment after the Smithsons' claim survived a hearing regarding failure to prosecute. The Smithsons have failed to establish prejudice from Howard Regional's omission to plead governmental immunity in its answer.

3. All dates refer to 2005.

a report with the following information, based upon statistics generated daily, at 7:00 a.m., by a weather site in Kokomo:

| Day | New Snow[4] | Snow on Ground | High Temp | Low Temp |
|---|---|---|---|---|
| 8th to 9th | 7.1 | 8 | 23 | 14 |
| 9th to 10th | - | 8 | 30 | 16 |
| 10th to 11th | 1.1 | 8 | 36 | 21 |
| 11th to 12th | 0.5[5] | 6 | 25 | 7 |
| TOTAL | 8.7 | | | |

Monday, December 12 "started with 06 inches of snow on the ground on undisturbed surfaces deposited mainly from a significant snow event that happened on December 8th." Appellant App. at 44. Despite 1.6 inches of new snow falling from the morning of Saturday, the 10th through Sunday, the 11th, the amount of snow on the ground decreased from 8 inches to 6 inches—a decline of 2 inches. Meanwhile, the high temperature over the weekend was 36 degrees. A reasonable inference is that 3.6 inches of snow melted in the two days preceding the incident, Saturday morning to Monday morning.

During the early morning hours of Monday, December 12, a freezing fog was in the area. The National Weather Service ("NWS") reported, at 2:20 a.m., that "it is likely the fog will freeze on road surfaces and potentially create slick and icy spots . . . especially on bridges and overpasses." Appellant App. at 46 (ellipsis in original). An hour later, the NWS reiterated that "this fog will freeze on some roadway surfaces and create slick spots." *Id.* Similar warnings were made again at 4:28 a.m. and 5:50 a.m. At 7:35 a.m., approximately one hour before Saundra's fall, the NWS revised this warning to address "elevated surfaces such as bridges and overpasses." *Id.* at 47. By 8:59 a.m., approximately one-half hour after the incident, the NWS made no reference to a freezing fog.

The Smithsons filed a complaint in which they sought damages resulting from Howard Regional's negligent maintenance of its parking lot, including the alleged failure to remove the ice, to put salt or sand on the ice, and to warn invitees of the hazardous condition. Howard Regional asserted that Saundra's fall resulted from "a sudden and unforeseeable onset of 'black ice' due to freezing of thick fog on the morning of December 12, 2005." Appee. App. at 32.

The trial court granted Howard Regional's motion for summary judgment, holding that the Smithsons failed to timely file notice of their claim under the Indiana Tort Claim Act. This Court reversed and remanded. *Smithson v. Howard Reg'l Health Sys.*, 908 N.E.2d 265, 269 (Ind.Ct. App.2009).

On remand, the parties again filed competing motions for summary judgment. Concluding that Howard Regional was immune under the Act because the injury was related to a temporary weather condition, the trial court entered summary judgment in favor of Howard Regional.

The Smithsons now appeal.

### Discussion and Decision

#### I. Standard of Review

The Smithsons argue that the trial court erred in determining that Howard

---

**4.** Measurements are in inches and degrees Fahrenheit.

**5.** This half-inch fell on Sunday, December 11.

Regional was immune under the Act for a loss resulting from the temporary weather condition of its parking lot. The trial court shall grant summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). In reviewing the entry of summary judgment, we apply the same standard as the trial court. *Filip v. Block*, 879 N.E.2d 1076, 1080 (Ind.2008), *reh'g denied*. We construe all facts and reasonable inferences in favor of the non-moving party. *Id.* All doubts regarding the existence of material issues of fact must be resolved against the moving party. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001). "If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper." *Id.* "If the evidence permits conflicting reasonable inferences as to material facts, the governmental unit has failed to establish its immunity." *Bules v. Marshall County*, 920 N.E.2d 247, 250 (Ind.2010).

## II. *Analysis*

■■■ "A governmental entity has a duty to maintain public thoroughfares." *Id.* However, a governmental entity is not liable if a loss results from the temporary condition of a public thoroughfare that results from weather. Ind.Code § 34–13–3–3(3). The governmental entity has the burden of proving that the immunity applies. *Hochstetler v. Elkhart County Highway Dep't*, 868 N.E.2d 425, 426 (Ind. 2007). The Act is in derogation of the common law and is therefore narrowly construed against the grant of immunity. *Hiland v. State*, 879 N.E.2d 621, 625 (Ind. Ct.App.2008).

The parties agree that Saundra's fall resulted from the icy surface of Howard Regional's parking lot. Their disagreement centers on whether Howard Regional had a reasonable opportunity to remedy the condition initially caused by weather. *See Gary Cmty. Sch. Corp. v. Roach–Walker*, 917 N.E.2d 1224, 1228 (Ind.2009). Within this context, the Indiana Supreme Court concluded that governmental immunity applied where a heavy storm occurred less than four hours before a motorist hit a tree fallen across a road. *Hochstetler*, 868 N.E.2d at 427. Similarly, immunity applied where a torrential rain storm washed out several culverts the night before an early morning crash and the county received no advance notice of the specific washed-out culvert that caused the accident. *Catt v. Bd. of Comm'rs of Knox County*, 779 N.E.2d 1, 6 (Ind.2002). However, governmental immunity did not apply where a slick surface "may have persisted for several days" in an area that was or should have been "regularly patrolled." *Roach–Walker*, 917 N.E.2d at 1228–29.

Recently, in *Bules v. Marshall County*, the Indiana Supreme Court held that governmental immunity applies "at least until the weather condition has stabilized, and immunizes the governmental unit from liability for alleged flaws in its remedial steps." *Bules*, 920 N.E.2d at 249. On Wednesday, January 12, 2005, Marshall County experienced a record high of 62 degrees Fahrenheit. The temperature then dropped. On Thursday and Friday, the county responded to flooding and icing. In the early morning of Saturday, January 15, 2005, with the temperature in the low teens, Bules drove over a hill, hit water, and crashed. There were disputed facts regarding the placement of one or more warning signs.

As noted, the *Bules* Court held that governmental immunity applied. Its reasoning, however, was *not* based upon the number of days the condition existed be-

fore the accident (flooding and icing on Thursday and Friday before the early Saturday crash). Instead, the *Bules* Court emphasized that a "historic crest was reached on January 15, the day of the accident." *Id.* at 251. "Even if the County was negligent in its initial response to warn passengers of the flooding on King Road, the accident occurred during the period of a still evolving condition." *Id.* "As a governmental entity responds to the temporary weather conditions, the statute confers immunity at least until the condition is stabilized and the responses are completed." *Id.*

Here, Saundra fell a few parking rows from the hospital entrance. Three photographs, taken five or six hours after the accident by David Daily, Howard Regional's risk manager and security director, depict six or seven parking spaces and the open pavement in front of them. They reveal snow, ice, and slush under and next to one parked car, as well as one or two puddles covering most of the parking surface. The puddles are large enough and deep enough to clearly reflect the rear bumper of a parked car and a holiday decoration attached to a light pole. Regarding the photographs, Daily stated in a deposition that, "I just actually took it from the sidewalk straight out to just show the whole lot … because I didn't know the location, the exact location." Appellant App. at 34–35. Daily acknowledged that there was "a fairly thick coating of moisture" depicted in the photographs. *Id.* at 35.

Daily's deposition included the following:

Q: Was there any rain that day?

A: It did not rain that day.

Q: So this accumulation would have been there for several days?

A: I can't answer that.

Q: Well it didn't magically appear did it?

A: I agree, you know, but I can't say it'd been there for several days. I know over the weekend we'd had lots of snow that weekend. And I know that Plant Operations was out shoveling or out plowing snow. So I figure that probably the actual snow or whatever, or ice, or water had slowly melted.

. . .

Q: Does that photograph show any salt or sand?

A: No.

Q: Visible?

A: No, hum-um. Not that I can see of.

Q: Would the photographs that you take, is it your experience, does it show sand or salt when …?

A: Normally not when the area's wet. . . .

. . .

Q: And there are some areas that don't look like there's a lot of water, but other areas do?

. . .

A: That's correct.

Q: And you don't see any sand or salt on there, do you?

A: I don't.

Appant App. at 35–37. Howard Regional's Director of Plant Operations, Richard Zeltner, identified the potential for collected snow and ice to thaw and re-freeze:

[A]nytime you've got moisture on the ground and the temperature changes from above freezing to below freezing you have the potential to have ice form.

Uh, our biggest goal is to keep the steps cleared, because that's the most likely place for somebody to fall. But uh, and the sidewalks, the same thing, as we keep them salted down and uh,

there's no particular place that says: "Ah, this place always has ice . . ." *id.* at 94.

Neither Zeltner nor Jacob Kinney, Howard Regional's Groundskeeper, observed fog at the hospital that morning. Kinney salted the parking lots approximately ten minutes after learning of Saundra's fall. In his deposition, Kinney stated:

Q: You did find some black ice in the Surgery Center parking lot?

A: Yes.

Q: And you threw some salt on it?

A: Yes.

Q: And there wasn't any, there wasn't any fog when you were out there?

A: No.

Appellant App. at 71. Daily testified to witnessing the fog. However, although he stated that a thin coat of ice had formed on a handrail, he did not observe ice under foot. "The steps were unslick, but I did notice the handrail had ice." Appellant App. at 23. He made this observation at 8:30 a.m., the same time that Saundra fell.

On appeal, Howard Regional asserts that the meteorological report "is providing ice data for only December 12, 2005 (the date of Saundra's alleged fall) and *not* the 4 day period prior to the fall." Appellee Brief at 9 (parenthetical and emphasis in original). To the contrary, the report contains relevant data for five days, including the 7–inch snowfall on December 8 through the date of the incident, December 12.

More than seven inches of snow fell four days before Saundra's fall. Nothing in the parking lot warned of an icy condition. The hospital's own photographs show a portion of the Indiana Surgery Center parking lot to be covered with large puddles and a layer of ice, snow, and slush on the parking surface. A reasonable inference would be that a fog could not deposit such an amount of moisture. And, unlike the county-wide systems of roads addressed in *Hochstetler, Catt,* and *Bules,* Howard Regional is responsible only for its own grounds. At 8:30 a.m. on a week day, Saundra fell a few parking rows from the hospital entrance.

For a large geographic area, the NWS warned of the possibility of a freezing fog. Daily witnessed fog and noticed only a thin coat of ice on a handrail, not under foot.

While we recognize the precedential value of *Bules,* its reasoning relies on the fact that the flood waters were still rising on the day of the plaintiffs' injuries. In contrast, there is designated evidence to support the Smithsons' contention that the icy condition in the Indiana Surgery Center parking lot resulted from Howard Regional's failure to adequately address a heavy snow that had occurred four days earlier. Furthermore, unlike the circumstances in *Hochstetler* (storm placed tree across road), *Catt* (torrential rain washed out culvert), *Roach–Walker* (snow caused slick surface), and *Bules* (flood placed water across road), the Smithsons and Howard Regional offer different weather-related causes of the icy condition. In the previous four cases, there was no dispute regarding what caused the hazardous condition. Here, there is such a disagreement. The Smithsons assert that the December 8 snow caused the icy condition, while Howard Regional asserts, based upon Daily's testimony, that a heavy, freezing fog caused the icy condition.

A factfinder must determine what caused the icy condition and whether the hospital had a reasonable opportunity to remedy it. These are questions of fact, which we should not purport to answer.

Howard Regional seeks to have us take as true the designated evidence favorable

to it, the movant. Our standard of review requires the opposite.

Based upon the designated evidence, the slick parking surface, that was or should have been regularly patrolled at Howard Regional, may have resulted from one or both of: (1) melting and re-freezing snow and ice that may have been present for days; and/or (2) a heavy, freezing fog that would have existed, if at all on Howard Regional's property, for several hours. *Roach–Walker*, *Hochstetler*, and *Catt* make this a critical factual determination for purposes of analyzing whether governmental immunity applied. Because a genuine issue of material fact exists, summary judgment was improper.

### Conclusion

The trial court erred in concluding that there were no genuine issues of material fact.

Reversed and remanded.

MAY, J., and BARNES, J., concur.

### ORDER

Appellants, by counsel, have filed a Motion To Publish, and having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellants' Motion to Publish is GRANTED, and this Court's opinion handed down in this cause in June 29, 2010, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

BAILEY, MAY and BARNES, JJ., concur.