Teresa VOIT, Stephanie Voit,
and Stephen Sulkowski,
Appellants–Plaintiffs,

v.

ALLEN COUNTY and Allen County
Highway Department, Appellees–
Defendants.

No. 02A03–9308–CV–275.

Court of Appeals of Indiana,
Third District.

May 4, 1994.

Rehearing Dismissed Oct. 13, 1994.

Neal Lewis, Lowe Gray Steele & Hoffman, Indianapolis, for appellant.

Mark W. Baeverstad and Craig J. Bobay, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellee.

GARRARD, Judge.

Teresa Voit, Stephanie Voit, and Stephen Sulkowski[1] (plaintiffs) appeal a grant of partial summary judgment in favor of Allen County and the Allen County Highway Department (defendants).

## FACTS AND PROCEDURAL HISTORY:

The facts material to this appeal are not in dispute and reveal that on August 6, 1989 Teresa Voit and her daughter Stephanie were traveling northbound on Adams Center Road between Moeller Road and U.S. Highway 30 in Allen County, Indiana. Teresa was driving. In their complaint, plaintiffs allege that, in order to avoid another vehicle that was approaching left of center, Teresa swerved and drove off Adams Center Road onto the gravel shoulder. She then apparently lost control of the vehicle and drove off the east side of the roadway. Teresa struck a bridge warning sign, sailed over a ditch/culvert, collided with the earth embankment on the opposite side of the ditch, and eventually came to rest in a field at the side of the road. Plaintiffs allege damages from this accident.

On April 8, 1991, plaintiffs filed suit against defendants alleging that they had failed to perform necessary maintenance to Adams Center Road and alleging that Adams Center Road was not a reasonably safe highway. Defendants asserted the defense of governmental immunity and filed for partial summary judgment on February 26, 1992. An evidentiary hearing was held on June 22, 1992 and on July 13, 1992 the trial court granted defendants' motion for partial summary judgment finding that defendants were immune from liability for any design defects in Adams Center Road and from any discretionary decision to forego improvements to the design of Adams Center Road. The trial court also granted defendants' motion to bar evidence of any alleged design defects at trial.

On March 22–25, 1993 a jury trial was held on the only remaining issue: whether defendants were negligent in providing and maintaining Adams Center Road in a reasonably safe condition. The jury returned a verdict for defendants.

On appeal, plaintiffs challenge only the trial court's grant of partial summary judgment in favor of defendants on the question of governmental immunity.

## DISCUSSION:

The standard for reviewing grants of summary judgment is well established. Plaintiffs in this case must demonstrate that the trial court erroneously determined that there was no genuine issue of material fact and that defendants were entitled to judgment as a matter of law. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 365. This court is governed by the same rules applicable in the trial court, *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 562, and the contents of all pleadings, affida-

---

**1.** Stephen Sulkowski is the husband of Teresa Voit. He alleges damages in this case from lost consortium.

vits, and testimony are liberally construed in the light most favorable to the non-moving party. *Greathouse,* 616 N.E.2d at 366.

In this case, plaintiffs do not allege that a factual dispute exists. They argue instead that defendants are not immune from liability under the Indiana Tort Claims Act as a matter of law. The specific statutory provisions at issue here read as follows:

IC 34–4–16.5–3. Immunity from liability.—A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

.   .   .   .   .

(6) The performance of a discretionary function;

.   .   .   .   .

(16) Design of a highway (as defined in IC 9–13–2–73), if the claimed loss occurs at least twenty (20) years after the public highway was designed or substantially redesigned; except that this subdivision shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition[.]

The question of whether a governmental entity is immune from liability for its action is a question of law for the courts. *Peavler v. Board of Comm'rs of Monroe County* (1988), Ind., 528 N.E.2d 40, 46. In this case, the trial court found that both subdivisions (6) and (16) applied to the facts of this case and granted defendants' partial summary judgment on this basis. We agree.

The facts delineated by the trial court reveal that Adams Center Road and the adjacent culvert involved in this accident were both originally designed and built in 1962. Neither the road nor the culvert has been redesigned since that time. On the other hand, plaintiffs' accident occurred in 1989, well over twenty years past the time that the road and culvert were designed and built. It is clear, therefore, that any allegations regarding defects to the design of Adams Center Road and the culvert in question are covered under subdivision (16).

Plaintiffs contend, however, that their allegations of negligence are not based on defects in the 1962 design, but rather are based on defendants' failure to update that design to accommodate modern safety technology and to accommodate an increase in traffic on Adams Center Road since the road was built. Plaintiffs couch this argument in terms of defendants' failure to fulfill their continuing duty to evaluate road conditions in order to determine whether the defendants were providing the public with a safe highway. Plaintiffs insist that, because defendants did not take certain steps (similar to those recommended by their expert witness, Maurice Bronstad) to "abate the safety hazard" alleged to exist on Adams Center Road, defendants violated their duty to "maintain" Adams Center Road in a reasonably safe condition, a duty not exempted by subdivision (16).

Plaintiffs' choice of language, however, does not change the underlying nature of their allegations. Plaintiffs essentially seek, in this lawsuit, to hold defendants liable for a failure to make what they allege to be needed improvements to Adams Center Road.[2] To the extent that plaintiffs seek improvements to the current design and do not allege defects in the original 1962 design, we agree that IC 34–4–16.5–3(16) is not applicable and will not serve as a basis for granting immunity in this case. Allegations of a failure to update, improve, or modernize the roadway and culvert in question, however, directly implicate IC 34–4–16.5–3(6), governmental discretionary functions.

When determining whether a governmental entity has engaged in a discretionary function and is therefore immune from liability under the statute, Indiana courts apply the "planning-operational" test. *Greathouse,* 616 N.E.2d at 366; *Peavler,* 528 N.E.2d at 46. Under this test, if the decision

---

2. In this case, Mr. Bronstad, plaintiffs' expert witness, made certain recommendations on what design changes would "abate" the current road hazards alleged to exist on Adams Center Road at the site of the accident. These include extending the culvert pipe five to ten feet, widening traffic lanes, widening the shoulder of the road, and installing guard rails.

of the governmental entity was a "planning" activity, that is a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and immune under IC 34–4–16.5–3(6). *Peavler*, 528 N.E.2d at 45. Government decisions about policy formation which involve assessment of competing priorities, a weighing of budgetary considerations, or the allocation of scarce resources are also planning activities. *Id.* On the other hand, if the function is "operational," for example decisions regarding only the execution or implementation of already formulated policy, the function is not discretionary under the statute and no immunity attaches. *Greathouse*, 616 N.E.2d at 366–67.

The reason for this distinction in functions was explained by our supreme court in *Peavler*:

> The policy underlying governmental immunity is the fundamental idea that certain kinds of executive branch decisions should not be subject to judicial review. The separation of powers doctrine forecloses the courts from reviewing political, social and economic actions within the province of coordinate branches of government. In this way, the discretionary function exception articulates "a policy of preventing tort actions from becoming a vehicle for judicial interference with decision-making that is properly exercised by other branches of the government."

*Peavler*, 528 N.E.2d at 44 (quoting *Blessing v. United States*, 447 F.Supp. 1160, 1170 (E.D.Penn.1978) (interpreting FTCA discretionary function exception)).

> Governmental immunity for discretionary functions also avoids inhibiting the effective and efficient performance of governmental duties. Policy-making activities lie at the heart of governance and such essential acts should not be subject to judicial second-guessing or harassment by the actual or potential threat of liability litigation. Tort immunity for basic planning and policy-making functions is necessary to avoid the chilling effect on the ability of the government to deal effectively with difficult policy issues which it confronts daily.

*Peavler*, 528 N.E.2d at 44.

[5, 6] In order to determine whether a governmental entity has engaged in the type of policy oriented decision-making for which immunity is available under IC 34–4–16.5–3(6), the entity or individual in question must present evidence that the particular act or omission was the result of a conscious balance of risks and benefits. *Peavler*, 528 N.E.2d at 47. "The governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by the conscious balancing of risks and benefits." *Greathouse*, 616 N.E.2d at 367. In the case of omissions, a conscious balancing may be demonstrated by evidence showing that the governmental entity considered improvements of the general type alleged in plaintiffs' complaint. *See Mullen v. City of Mishawaka* (1988), Ind.App., 531 N.E.2d 229, 230–31, *trans. denied* (immunity attached for failure to place a traffic warning sign where city engaged in policy oriented decision-making concerning general placement of traffic signs based on positive recommendations of city engineer who diagramed the location of accidents and recommended placement of warning signs to the city council). Where this is shown, there is no need for the entity to demonstrate that it considered and rejected the specific improvements alleged.

[7] The record in this case reveals that defendants engaged in the kind of policy-making decision that is immune from liability under IC 34–4–16.5–3(6). As the trial judge noted in her delineation of the facts, defendants engage in a systematic process for determining what improvements will be made to highways in Allen County. First, the Director of Transportation Planning for Local Governments makes recommendations for highway improvements to the Urban Transportation Advisory Board (UTAB). The UTAB does traffic counts within its survey area, keeps track of all accidents, citizen complaints, and other safety problems, and then makes recommendations in the form of a list of projects to the Board of Commissioners of Allen County (Board). The UTAB

does not make negative recommendations. In addition to the UTAB, the Director of the Allen County Highway Department is also empowered to make recommendations on improvement projects to the Board. The Board then makes the ultimate decision on whether to accept or reject proposed improvements. When making these decisions, the Board considers written recommendations, the changed conditions of county roads, and the allocation of available resources. The Board prioritizes recommended projects.

In this case, the UTAB concluded that traffic projections did not show a need to widen or improve Adams Center Road. There were also no citizen complaints. The UTAB therefore made no recommendations for improvements concerning Adams Center Road. Because no recommendation was made, the Board did not specifically consider possible improvements. As we have noted above, however, there is no need for the Board to have specifically considered and rejected improvements to Adams Center Road. It was sufficient to demonstrate that they consciously engaged in decision making regarding the general type of improvements alleged in plaintiffs' complaint. That has been more than adequately demonstrated here. We therefore affirm the trial court's grant of partial summary judgment on this basis.

For the foregoing reasons, the judgment of the trial court is affirmed.

STATON and FRIEDLANDER, JJ., concur.