**Elizabeth LEE, as surviving custodial parent of Michaelynn Lee, Deceased, Appellant–Plaintiff,**

v.

**STATE of Indiana and The Indiana, Department of Transportation, Appellees–Defendants.**

No. 39A04–9609–CV–394.

Court of Appeals of Indiana.

July 15, 1997.

William Edward Jenner, Jenner & Auxier, Madison, for Appellant–Plaintiff.

Jeffrey A. Modisett, Attorney Genera, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellees–Defendants.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff-Appellant Elizabeth Lee ("Lee") appeals from the trial court's determination that Defendants–Appellees the State of Indiana and the Indiana Department of Transportation (collectively "INDOT") were immune from liability following Lee's wrongful death action on behalf of her deceased daughter Michaelynn Lee ("the decedent").

We affirm.

### ISSUE

One issue is presented for our review, which we restate as follows: Whether the trial court correctly determined that INDOT was entitled to discretionary function immunity pursuant to the Indiana Tort Claims Act.

### FACTS AND PROCEDURAL HISTORY

The incident which gave rise to this lawsuit occurred in the early morning hours of July 2, 1992, on State Road 7 in Wirt, Indiana. The decedent was a passenger in a vehicle traveling north-bound along S.R. 7 near the intersection of County Road 480 North, and the driver failed to successfully negotiate a series of curves located at the Wirt Bridge.[1] The vehicle left the roadway, struck a bridge railing, went over an embankment and struck a utility pole. The seventeen-year-old decedent sustained fatal injuries as a result of the accident.

On February 15, 1994, Lee filed a wrongful death complaint on behalf of her deceased daughter. Specifically, Lee averred in her complaint that INDOT was negligent in that it improperly designed and constructed S.R. 7, failed to properly warn motorists of the unreasonably dangerous nature of S.R. 7, failed to maintain S.R. 7 so as to prevent injury to motorists, and failed to eliminate the known dangerous condition of S.R. 7. On May 6, 1994, INDOT filed its answer denying all material allegations and raised several affirmative defenses, including governmental immunity pursuant to Ind.Code 34–4–16.5–1 et seq.

INDOT thereafter filed its motion for summary judgment arguing that it was entitled to judgment as a matter of law because it was immune from liability pursuant to the doctrine of discretionary function immunity. Following a hearing on the motion, the trial court granted INDOT's motion, and summary judgment was entered in its behalf. Lee appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Lee contends that the trial court erred in granting summary judgment in favor of INDOT because INDOT was not immune from liability pursuant to Ind.Code 34–4–16.5–3(6). In reviewing a ruling on a motion for summary judgment, we use the same standard used by the trial court. *Lim v. White*, 661 N.E.2d 566, 568 (Ind.Ct.App.1996). Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Indiana Compensation Fund v. Anderson*, 661 N.E.2d 907, 908 (Ind.Ct.App.1996), *trans. denied;* Ind. Trial Rule 56(C).

When reviewing summary judgment rulings, we may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. T.R. 56(C), (H); *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). Furthermore, all facts and inferences must be

---

1. These "S-shaped" curves are commonly known as the "Wirt Curves."

liberally construed in the light most favorable to the non-moving party. *Haas Carriage, Inc. v. Berna,* 651 N.E.2d 284, 287 (Ind.Ct.App.1995). The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 513 (Ind.Ct.App.1994), *reh'g denied.* Once the movant satisfies this burden, the burden shifts to the non-moving party to produce specifically designated facts showing the existence of a genuine issue. *Id.* Summary judgment is rarely appropriate in negligence cases. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996).

■■■ The section of the Indiana Tort Claims Act upon which INDOT relies provides as follows:

> [a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
>
> (6) the performance of a discretionary function . . .

Ind.Code 34–4–16.5–3(6). Whether a governmental entity is immune from liability under section 16.5–3 of the Act is a question of law for the courts. *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1118 (Ind.Ct.App.1995), *trans. denied.* Furthermore, because the Act is in derogation of the common law, it is narrowly construed against the grant of immunity. *Id.* The party seeking immunity bears the burden of proving that its conduct falls within the Act, and thus is shielded from liability. *Id.*

■ Section 16.5–3(6) of the Act was first construed by our supreme court in *Peavler v. Bd. of Comm'rs of Monroe County,* 528 N.E.2d 40 (Ind.1988). The *Peavler* court adopted the "planning-operational test." The standard essentially provides that a governmental entity will not be held liable for negligence arising from decisions which are made at a planning level, as opposed to an operational level. We recently explained the test as follows:

> Under the [planning-operational] test, if the decision of the governmental entity

was a 'planning' activity, that is a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and immune under I.C. 34–4–16.5–3(6). Government decisions about policy formation which involve assessment of competing priorities, a weighing of budgetary considerations, or the allocation of scarce resources are also planning activities. On the other hand, if the function is 'operational', for example decisions regarding only the execution or implementation of already formulated policy, the function is not discretionary under the statute and no immunity attaches.

*Voit v. Allen County,* 634 N.E.2d 767, 769–70 (Ind.Ct.App.1994), *reh'g dismissed, trans. denied.*

■ The case before us is a case of omission. When considering cases of omission "a conscious balancing may be demonstrated by evidence showing that a governmental entity considered improvements of the general type alleged in plaintiff's complaint." *Id.* at 770. Here, the evidence reveals that INDOT engaged in decision-making regarding the specific improvement alleged in Lee's complaint. In fact, improvement of the Wirt Curves was in the planning phase at the time of the decedent's accident.

The record contains a significant amount of correspondence regarding the Wirt Curves. Members of the community expressed grave concern due to the history of fatal accidents on the Curves and the general awareness that the Curves were dangerous and a hazard to drivers. The area of the Wirt Curves was inspected as early as 1983 according to INDOT's records. Initial data was gathered at this time for the preparation of environmental reports and a determination of project scope concerning the replacement of a bridge located approximately .04 of a mile from the Curves. In January of 1984, INDOT began actively planning to replace the bridge over Harbatus Creek in Wirt. This project was being handled by INDOT's Central Office in Indianapolis. Also in 1984, INDOT's Seymour District investigated the Wirt Curves for possible replacement. In

November of 1984, the Seymour District recommended the Curves as a potential Sight Distance Improvement location for the 1985–87 Highway Improvement Program.

In early 1985, INDOT decided that the Harbatus Bridge project and the Wirt Curve project should be incorporated into one large project. In May of 1985, INDOT approved the Wirt Curves Project, and the combination project was preliminarily scheduled for November of 1987. After a revised engineering report and survey was completed, the project was deemed ready for public hearing in November of 1987. The public hearing was held on May 16, 1988, and in February of 1989, INDOT requested approval for the project from the Federal Highway Administration. In November of 1990, the engineering was completed and INDOT began appraising the value of the land it needed to acquire in order to complete the project. The FHA approved the revised project on August 8, 1992. The contract for the project was awarded in October of 1992, and the project was completed in February of 1994. The decedent's accident occurred on July 2, 1992.

Lee argues that at the time of the decedent's accident, the project had moved beyond the planning phase. Specifically, she contends that as of February of 1989, when INDOT requested location and design approval from the FHA, the planning phase was complete. Thus, Lee contends that the project was operational as of 1989. We disagree. Although the design and engineering aspects of the project were completed at the time of the decedent's accident, the accident occurred during the land acquisition phase of the project. INDOT was required to purchase several parcels of land adjacent to S.R. 7 in order to straighten the road thereby eliminating the Wirt Curves. The operational phase of the project did not begin until after the contract was let for bidding on October 16, 1992. Decedent's accident occurred in July of 1992, and hence the project was still in the planning phase.

In adopting the planning-operational test for determining whether a governmental entity has engaged in a discretionary function and is therefore immune from liability, the *Peavler* court discussed the policy underlying governmental immunity. 528 N.E.2d 40. The court said that the policy underlying this type of immunity is based on the concept of separation of powers between the coordinate branches of government and the notion that we should prevent tort actions from becoming a vehicle for judicial review of government policy-based decisions. *Id.* at 44. The critical inquiry then is on the policy underlying government immunity. *Id.* Our decision on this issue should turn on whether the challenged act or omission is the type of function that the legislature intended to shield from liability. After reviewing the record, we think that the project at issue represents exactly the type of discretionary function that the legislature intended to protect. INDOT's decision to correct the Wirt Curves in conjunction with the replacement of Harbatus Bridge was the type of discretionary decision intended to be shielded from liability. We will therefore not second-guess INDOT's policy-oriented decision.

### CONCLUSION

Based on the foregoing, the trial court correctly decided that INDOT was entitled to immunity pursuant to Ind.Code 34–4–16.5–3(6). Accordingly, the trial court is affirmed in all respects.

Affirmed.

DARDEN and ROBERTSON, JJ., concur.