**PNC BANK, INDIANA, as Guardian of Marcus L. Speedy, a Minor, and Darrell Summers**

**and**

**Charlene Summers, Guardians of Jason R. Summers, a Minor, Appellants–Plaintiffs,**

**v.**

**STATE of Indiana, Appellee–Defendant.**

**No. 10A01–0009–CV–305.**

Court of Appeals of Indiana.

June 27, 2001.

David V. Scott, Scott & Forrest, New Albany, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

PNC Bank Indiana ("PNC"), as guardian of Marcus L. Speedy, a minor, appeals the trial court's grant of summary judgment in favor of the State. PNC raises three issues for our review, which we restate as one: whether the State of Indiana is immune from liability under the Indiana Tort Claims Act ("ITCA") for injuries sustained by Speedy in an automobile accident allegedly caused by the State's negligence.

We affirm.

**Facts and Procedural History**

On April 22, 1997, Speedy sustained severe injuries while he was a passenger in a vehicle that was involved in a head-on collision at the intersection of State Roads 311 and 60 in Sellersburg, Indiana. The vehicle in which Speedy was a passenger was southbound on State Road 311 attempting to make a left turn east on to State Road 60. As the vehicle entered the intersection, it was struck by a vehicle attempting to continue through the intersection headed northbound.

There had been several other serious accidents at this intersection prior to the accident that resulted in Speedy's injuries. In August of 1996, the State installed a new traffic signal at this intersection. The intersection had a left turn lane for both northbound and southbound traffic on State Road 311, but the signal installed in 1996 did not have a left turn arrow for traffic in either direction.

PNC's predecessors filed a negligence action against the State on April 6, 1998, alleging that the State negligently caused Speedy's injuries by failing to provide a left-turn arrow at the intersection where the accident occurred. The State filed a motion for summary judgment alleging, *inter alia*, that it was immune from liability under the ITCA. Ind.Code § 34–4–16.5–1 *et seq.* The trial court granted this motion on July 25, 2000. PNC appeals.

**Discussion and Decision**

The State claimed in its motion for summary judgment, and maintains in this appeal, that it is immune from liability to PNC for Speedy's injuries because its alleged act of negligence (failure to install a left-turn signal) was a discretionary function.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to

446

judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the non-moving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994). We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

Indiana Code section 34–13–3–3(6) provides that a governmental entity is not liable for loss resulting from "the performance of a discretionary function." Whether a governmental entity is immune from liability under this section is a question of law. *Lee v. State*, 682 N.E.2d 576, 578 (Ind.Ct.App.1997), *trans. denied.*

In *Peavler v. Board of Comm'rs of Monroe County*, 528 N.E.2d 40 (Ind.1988), our supreme court adopted the "planning-operational test" for assessing whether a governmental entity is immune under the ITCA for the performance of a discretionary function. Essentially, this test provides that a governmental entity will not be liable for negligence arising from decisions that are made at a planning level, as opposed to an operational level. *Lee*, 682 N.E.2d at 578. We explained the test as follows:

Under the [planning-operational] test, if the decision of the governmental entity was a 'planning' activity, that is a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and immune under I.C. 34–4–16.5–3(6). Government decisions about policy formation which involve assessment of competing priorities, a weighing of budgetary considerations, or the allocation of scarce resources are also planning activities. On the other hand, if the function is 'operational', for example decisions regarding only the execution or implementation of already formulated policy, the function is not discretionary under the statute and no immunity attaches.

*Id.* (quoting *Voit v. Allen County*, 634 N.E.2d 767, 769–70 (Ind.Ct.App.1994), *trans. denied*).

In *Lee*, the mother of an automobile passenger who died in an accident after the driver failed to successfully negotiate a series of curves on a state road brought a wrongful death action against the State. Lee argued that the State was not entitled to discretionary function immunity under the ITCA because there had been a history of fatal accidents on the curves and an improvement project regarding the curves had moved beyond the planning stage and into the operational phase. In affirming the trial court's grant of summary judgment in favor of the State based on discretionary function immunity, this Court noted that the negligence complained of was a case of omission, i.e., the State's failure to warn of and/or correct the dangerous curves. *Id.* We stated, "when considering cases of omission 'a conscious balancing

may be demonstrated by evidence showing that a governmental entity considered improvements of the general type alleged in plaintiff's complaint.'" *Id.* (quoting *Voit,* 634 N.E.2d at 770). We went on to identify evidence in the *Lee* record that the State, specifically the Indiana Department of Transportation ("INDOT"), had engaged in decision-making regarding the specific improvement alleged in Lee's complaint. We concluded from evidence that the State had not let the improvement project for bidding or acquired the land required to complete the improvements and that the project was still in the planning, rather than the operational phase at the time of the decedent's accident, despite the fact that design and engineering aspects of the project were complete. *Id.* at 580.

▮ Likewise, in the case at bar, PNC's complaint alleges a negligent omission, i.e., the State's failure to install a left-turn signal on State Road 311. Also as in *Lee,* the evidence of record reveals that the State considered improvements of the type alleged in PNC's complaint and that conscious balancing of competing alternatives was involved. Planning functions are characterized "by official judgment, discretion, weighing of alternatives, and public policy choices." *State v. Livengood by Livengood,* 688 N.E.2d 189, 194 (Ind.Ct.App. 1997). Specifically, the designated materials reveal that each of INDOT's six districts, including the district in which the intersection of State Roads 311 and 60 is located, submits proposed improvement projects on an annual basis. INDOT reviews proposed projects and selects new projects based on a variety of factors, including need, funding, accident history, traffic volume, business growth, existing condition, safety, and environmental issues. In 1993, INDOT accepted a proposal to improve the intersection of State

Roads 311 and 60. This project was scheduled to be completed over the following few years. However, the original assessment and improvement plan did not call for left-turn signals. Pursuant to additional study, it was determined in the spring of 1997 that left-turn arrows were needed on State Road 311 at the intersection, but that then-existing pavement dimensions would not allow for their placement. Additionally, in 1997, before the original intersection improvement project could be completed, the district determined that major reconstruction on Interstate 65 would require closure of the exit ramps at Interstate 65 and the State Road 311 interchange. The district evaluated the progress of the intersection improvement project and determined that it could not be concluded prior to the Interstate 65 project, and that the latter project would require traffic to be rerouted through the intersection of State Roads 311 and 60. Accordingly, the district prepared an abbreviated improvement project to accommodate the rerouted traffic. This abbreviated plan called for limited approach lanes, thus allowing for the placement of turning phases for all four directions of approach. However, this abbreviated project was not let for bidding and implementation was not begun until October of 1997, several months after Speedy's April 22, 1997 accident. We conclude from this evidence, as we did with similar evidence in *Lee,* that the State's allegedly negligent failure to install a left-turn signal prior to Speedy's accident is entitled to immunity because it involved the performance of discretionary function. *See also Voit,* 634 N.E.2d at 769 (allegations of a failure to update, improve, or modernize a roadway directly implicate the discretionary function immunity provision of the ITCA).

▮ As we noted in *Lee,* the critical inquiry in determining whether a govern-

mental entity is entitled to immunity under the ITCA is "whether the challenged act or omission is the type of function that the legislature intended to shield from liability." *Lee,* 682 N.E.2d at 579. This was not an instance where the State decided to install left-turn signals and had all of the plans in place to do so, but then dropped the ball in implementation. Rather, the INDOT had to engage in an evaluative process regarding improvements to be made, not only to the intersection of State Roads 311 and 60, but also between that project and other projects, such as the Interstate 65 project. Thus, as we concluded in *Lee,* we conclude in the instant case that the improvement projects at issue represent "exactly the type of discretionary function that the legislature intended to protect." *Id.*[1] Accordingly, we hold that the trial court did not err in granting summary judgment in favor of the State.

Affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.

---

1. PNC relies, in part, on *Benton v. City of Oakland City,* 721 N.E.2d 224 (Ind.1999), for the proposition that the State is not immune under the ITCA. We do not find *Benton* applicable to the case at bar, as it addresses only the common law, and did "not relax any of the extensive protections from tort liability afforded Indiana governmental units by statute." *Id.* at 231. In *Benton,* neither the trial court nor the supreme court decided whether the city was immune under the ITCA.