

FILED

Jul 16 2015, 8:32 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Ian L. Stewart | David L. Byers |
| Stephenson Morow & Semler | Andrew J. Noone |
| Indianapolis, Indiana | Holwager, Byers, & Caughey |
| | Beech Grove, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| City of Beech Grove, <br> *Appellant-Defendant,* <br><br> v. <br><br> Cathy J. Beloat, <br> *Appellee-Plaintiff* | July 16, 2015 <br><br> Court of Appeals Case No. <br> 49A02-1409-CT-605 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Patrick L. McCarty, Judge <br><br> Cause No. 49D03-1302-CT-5276 |

**Mathias, Judge.**

[1] The City of Beech Grove, Indiana ("the City"), appeals the order of the Marion Superior Court denying the City's motion for summary judgment in the negligence claim brought against the City by Cathy J. Beloat ("Beloat"). The City appeals and argues that no genuine issues of material fact exist with regard to whether the City was entitled to immunity from suit for performance of a "discretionary function" under Indiana Code section 34-13-3-3(7).

[2] We reverse and remand.

## Facts and Procedural History

[3] The facts in the light most favorable to Beloat, as the non-moving party, reveal that on June 19, 2012, Beloat was walking across Main Street in Beech Grove, Indiana at the intersection of Main Street and 10th Street. As she walked across the street at the crosswalk, Beloat had to step outside of the crosswalk area to walk around a white pickup truck that had blocked part of the crosswalk. As Beloat did this, her foot went into a hole in the pavement and became stuck, causing her to trip. Beloat heard her left leg "snap," and she fell to the ground. Two passersby saw Beloat fall and helped her up; one of these passersby took her to the hospital, where she was treated for fractures in her left tibia and fibula, the two bones in the lower leg.[1]

[4] Beloat filed a complaint against the City on February 11, 2013, alleging negligence. The City responded on March 28, 2013, and almost a year later, on March 10, 2014, the City filed a motion for summary judgment, claiming that Beloat was unable to prove proximate cause because she did not know which hole had caused her to fall, that the City was entitled to discretionary function immunity under Indiana Code section 34-13-3-3(7), and that Beloat's claim was barred due to contributory negligence. Beloat filed a response to the City's motion, and the trial court held a summary judgment hearing on July 21, 2014. The trial court issued an order denying the City's motion for summary

---

[1] *See* http://www.britannica.com/EBchecked/topic/595018/tibia.

judgment on July 24, 2014. The City then requested that the trial court certify its order for interlocutory appeal. The trial court did so, and we accepted interlocutory jurisdiction on October 3, 2014.

## Summary Judgment Standard of Review

[5] Our standard for reviewing a trial court's order granting a motion for summary judgment is well settled:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

> The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo.

> Importantly for this case, summary judgment is rarely appropriate in negligence actions, since negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person. This standard is best applied by a jury after hearing all of the evidence.

*M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 235 (Ind. Ct. App. 2014), *trans. denied* (citations and internal quotations omitted).

## Discretionary Function Immunity

[6]     The City claims that it was entitled to summary judgment because it was entitled to immunity from Beloat's claim under Indiana Code section 34-13-3-3(7). As we explained in *Jackson*:

> The Indiana Tort Claims Act ("ITCA"), Indiana Code section 34-13-2-1 *et seq.*, was enacted after our supreme court abrogated the common law sovereign immunity of governmental units from tort liability. The ITCA governs tort claims against governmental entities and public employees. Pursuant to the ITCA, governmental entities can be subjected to liability for tortious conduct unless the conduct is within an immunity granted by Section 3 of [the] ITCA. The party seeking immunity bears the burden of establishing that its conduct comes within the ITCA.
>
> The ITCA provides that a governmental entity or governmental employee who acts within the scope of that employee's duty will not be liable if a loss results from "[t]he performance of a discretionary function[.]" Ind. Code § 34-13-3-3(7). The party who seeks immunity bears the burden of establishing that its conduct falls within the discretionary function exception.

*Id.* at 235-36 (some citations and internal quotations omitted).

[7]     Prior to our supreme court's decision in *Peavler v. Board of Commissioners of Monroe County*, 528 N.E.2d 40, 46 (Ind. 1988), this court distinguished between "ministerial" and "discretionary" acts to determine if certain conduct was included within the immunity exception. Discretionary acts were immune; ministerial acts were not. *See Jackson,* 9 N.E.3d at 236 (citing *Harvey v. Bd. of*

*Comm'rs of Wabash County,* 416 N.E.2d 1296 (Ind. Ct. App. 1981)). We defined a "ministerial" act as "one which a person performs in a given state of facts in a prescribed manner, in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done." *Id.* (citing *Dep't of Mental Health v. Allen,* 427 N.E.2d 2, 4 (Ind. Ct. App. 1981)). We classified conduct as discretionary if it involved discretion "on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way[.]" *Id.* (citing *Adams v. Schneider,* 71 Ind. App. 249, 124 N.E. 718, 720 (1919)).

[8] However, in *Peavler,* our supreme court expressly rejected the ministerial-discretionary distinction analysis and held that discretionary judgments are not immune from legal challenge under the ITCA unless they can be properly characterized as "policy" decisions that have resulted from a conscious balancing of risks and benefits and/or weighing of priorities. *Id.* (citing *Peavler*, 528 N.E.2d at 45-46). In rejecting the old ministerial/discretionary distinction, the *Peavler* court noted:

> The ministerial/discretionary test does not advance the public policy of government immunity because it does not consider the type of decision protected by immunity. Rather, it considers only the resulting conduct and attempts to label that conduct. The ministerial/discretionary test defines "discretionary" in the negative: anything which is non-ministerial is discretionary. The test does not require an affirmative finding that the governmental action arose from the type of policy-making decision protected by governmental immunity.

*Id.*

[9] In place of the ministerial/discretionary test, the *Peavler* court instead adopted a "planning/operational" test, defining "planning activities" as those that "include acts or omissions in the exercise of a legislative, judicial, executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy" as well as "[g]overnment decisions about policy formation which involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources are also planning activities." *Id.* at 45.

[10] Thus, under *Peavler*, the discretionary function exception of the ITCA insulates from liability only *planning* activity, characterized as "only those significant policy and political decisions which cannot be assessed by customary tort standards" and as "the exercise of political power which is held accountable only to the Constitution or the political process." *Id.* at 45. The supreme court was unambiguous in its declaration that it did not intend all decisions that involve "judgment or discernment" to be immune from liability, since "[i]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance." *Id.* at 43, 45; *see also Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.,* 3 N.E.3d 1 (Ind. 2014) (holding that the City's failure to require for-profit water company to follow terms of management agreement by properly maintaining water supply to fire hydrants was not a discretionary function, and thus, statutory immunity under the ITCA did not protect the city from liability

for damages that resulted from a fire that destroyed a restaurant when firefighters' efforts were delayed due to a frozen fire hydrant and when the city made no deliberate policy decision to fail to require company to follow the terms of a management agreement by properly maintaining fire hydrants' water supply, or make a conscious decision about policy formation which involved assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources); *Jackson*, 9 N.E.3d at 241-42 (holding that school corporation was not entitled to discretionary function immunity in claim against it in connection with the shooting of a student where school's safety plan was developed by the school's principal with no involvement from the school board or its committees and principal's development of the safety plan was not an exercise of political power).

[11] Here, the City designated evidence indicating that it was in the process of making a decision on improving Main Street. Specifically, the City was planning to totally reconstruct that portion of Main Street at the intersection of 10th Street, where Beloat's fall occurred, as opposed to performing piecemeal repairs. The City Council was in the process of approving the financing necessary to begin the complete reconstruction of Main Street at the time of Beloat's fall. In fact, the day before Beloat's fall, the City Council held the second of the three votes necessary to issue the bonds to fund the reconstruction project. This, the City argues, means that its decision not to improve the defects in Main Street prior to Beloat's fall is subject to discretionary function immunity.

In support of its position, the City cites *Lee v. State*, 682 N.E.2d 576, 577 (Ind. Ct. App. 1997). In *Lee*, the decedent was killed in an automobile accident that occurred on a series of curves on State Road 7 ("S.R. 7"). The decedent's mother filed suit against the State and the Indiana Department of Transportation ("INDOT"), claiming that INDOT negligently designed and constructed S.R. 7, failed to properly warn motorists of the unreasonably dangerous nature of S.R. 7, failed to maintain S.R. 7 so as to prevent injury to motorists, and failed to eliminate the known dangerous condition of S.R. 7. The trial court granted summary judgment in favor of the State on grounds that the State was immune to suit under the ITCA.

[12] On appeal, we affirmed the trial court, noting that the designated evidence indicated that INDOT had engaged in decision making regarding the specific improvement alleged in Lee's complaint, and improvement of the curves was in the planning phase at the time of the decedent's accident. *Id*. at 578. This, the *Lee* court held, was the exact sort of policy-based decision that the ITCA intended to shield from judicial review. *Id*. at 579.

[13] The City also cites *City of Indianapolis v. Duffitt*, 929 N.E.2d 231 (Ind. Ct. App. 2010), in which the plaintiff sued the city after tripping and falling on a city sidewalk. There, as here, at issue was whether the city was entitled to discretionary function immunity under the ITCA. After discussing the relevant case law, the *Duffitt* court held that the city was entitled to immunity, noting that the designated evidence revealed that the city had limited funds for sidewalk repair, that many projects competed for these funds, and therefore the

city had a policy regarding sidewalk repair prioritization in which sidewalks with the same level of priority were repaired in the order in which they were entered into the system. However, the Department of Public Works could have further prioritized or de-prioritized sidewalk repairs by conducting a cost-benefit analysis with due consideration for budgetary concerns and competing projects. Accordingly, the *Duffitt* court held that, "[g]iven the budgetary considerations and cost-benefit analyses which produced the City's prioritization scheme, the City's designated evidence demonstrates that its decisions are discretionary under the "planning-operational" test[.]" *Id*. at 238.

[14] The same is true in the present case. Here, the designated evidence reveals that the City Council was in the planning phase of an improvement project that would reconstruct Main Street at the location where Beloat's fall occurred. In making this decision, the City had to balance budgetary concerns with the need to repair the street. Instead of performing piecemeal repairs, the City decided to wholly reconstruct the street and was in the process of approving the bonding required to fund the repairs at the time of Beloat's accident. This sort of policy decision is the sort of planning decision that is afforded immunity under the ITCA's discretionary function immunity.

[15] We find Beloat's reliance on *Jackson* and *Scott v. City of Seymour*, 659 N.E.2d 585 (Ind. Ct. App. 1995), to be unavailing. In *Jackson*, we held that the school district was not entitled to discretionary function immunity because the school safety plan was developed by the school principal, who was not a public official or a public-policy maker. *Id*. at 240-41. Only the elected school board could

create a policy that would be subject to such immunity. *Id*. Because the school principal was not a public official and was not granted any statutory authority to develop a safety plan, we held that the principal's development of the safety plan was not an exercise of political power that would be immune from suit. *Id*. at 242. Similarly, in *Scott*, we held that the city was not entitled to discretionary function immunity because the decision to repair city streets was not made by the city board of public works but was instead the decision of one man—the city engineer and director of public works. 659 N.E.2d at 590. We held:

> [T]he fundamental concept underlying governmental immunity is the notion that certain kinds of executive or legislative branch policy decisions should not be subject to judicial review. *Peavler,* 528 N.E.2d at 44. Discretionary immunity, however, was not intended to protect a policy decision made by one Board member. *Public policy decisions committed to a board or commission and entitled to discretionary immunity must be made in public in the manner provided by law, not on an informal basis outside of the public record.* Without any minutes of a duly constituted Board meeting, we cannot conclude that the City, acting through its Board of Public Works, exercised official judgment or engaged in the necessary policy oriented decision-making process.

*Id*. at 591 (emphasis added).

[16] In contrast here, the decision regarding repaving and reconstructing Main Street was not made by one individual acting outside the normal policy-making procedures. Instead, it was made by the City's Board of Works and Safety and the City Counsel, as shown in the designated meetings of these bodies.

Beloat also cites *Scott* for the proposition that the City is not shielded from her claim because her claim can be addressed under traditional tort standards. We think this reads too much into that case. In *Scott*, the court wrote:

> [T]he discretionary function exception is not absolute but insulates only those significant policy and political decisions which cannot be assessed by customary tort standards. *It is not the province of the court to second-guess the wisdom of those executive or legislative decisions which were the result of a policy oriented decision-making process.* Rather, that exercise of power is held accountable only to the Constitution or the political process.

*Id*. at 589. Here, the decision not to make piecemeal repairs to Main Street and instead reconstruct the street is the very sort of policy-oriented decision which we are unwilling to second guess. The fact that Beloat frames her claim as simple negligence does not alter the fact that her claim ultimately calls into question the decision of the City to reconstruct the street instead of make smaller repairs.

## Conclusion

The designated evidence establishes that the policy decision to reconstruct Main Street was made by the elected policy makers, and the reconstruction of Main Street was in the planning stages when Beloat fell. Accordingly, we hold that the City is entitled to discretionary function immunity under section 34-13-3-3(7) of the ITCA. The trial court therefore erred in denying the City's motion for summary judgment, and we accordingly reverse the order of the trial court and remand with instructions to enter summary judgment in favor of the City.

Reversed and remanded.

May, J., concurs.

Robb, J., dissents with opinion.

City of Beech Grove,
*Appellant-Defendant,*

v.

Cathy J. Beloat,
*Appellee-Plaintiff.*

Court of Appeals Case No.
49A02-1409-CT-605

**Robb, Judge, dissenting.**

[1]     I respectfully dissent from my colleagues' determination that summary judgment was improperly denied because the City is entitled to "discretionary function" immunity from Beloat's suit. *See* Ind. Code § 34-13-3-3(7), slip op. at ¶ 18. I believe that the decision takes too broad a view of the discretionary function exception.

[2]     As the majority notes, *Peavler* adopted the "planning/operation" test for determining whether a particular governmental act is discretionary and therefore entitled to immunity. *See* slip op. at ¶ 9. "Essentially, the test provides that a governmental entity is immune from liability when the alleged negligence arises from decisions which are made at the planning level, as opposed to the operational level." *Scott*, 659 N.E.2d at 588-89.

> Planning activities include acts or omissions in the exercise of a legislative, executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy. Government decisions about policy formation which involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources are also planning activities.

*Peavler*, 528 N.E.2d at 45 (internal citations omitted). Discretionary function immunity "must be narrowly construed because it is an exception to the general rule of liability." *Id.* at 46. The City must therefore show "that the challenged act or omission was a policy decision made by consciously balancing risks and benefits." *Id.*

[3] Here, the City's mayor stated the following in an affidavit designated on summary judgment:

> For a number of years, [the City] was in the planning and then execution process of a road reconstruction project of Main Street from its intersection with Emerson Avenue to its intersection with 13th Street . . . . Rather than doing piecemeal repairs on Main Street, [the City] chose to perform a complete road reconstruction of the street. The Main Street Project consisted of pavement replacement, enclosed storm drainage system, parking lanes, bike lane, curb and gutter, sidewalks and other improvements to the Main Street pedestrian and vehicular corridor.

Appendix of Appellant at 32. Attached to the affidavit are minutes from Board of Works and Safety meetings at which the project design and funding was discussed, beginning in March of 2012. The "physical road reconstruction of the Main Street Project began in March 2013 with the entire reconstruction project concluding in November 2013." *Id.* I find no support in the designated

evidence for the proposition that the City made a conscious policy decision to perform *no* repairs—no matter how obvious the defect or serious the danger—to several blocks of Main Street beginning in March 2012 because a reconstruction project was being discussed. Nor do I find support for the proposition that the City engaged in an assessment of repairs that might need to be made pending the start of the reconstruction project and established a policy based upon that assessment. *See Duffitt*, 929 N.E.2d at 242 ("In the case of omissions, a conscious balancing may be demonstrated by evidence showing that the governmental entity considered improvements of the general type alleged in the plaintiff's complaint. Where this is shown, there is no need for the entity to demonstrate that it considered and rejected the specific improvements alleged.").

[4] In short, simply filling a pothole does not strike me as the kind of "piecemeal repair" that was set aside in favor of the overall improvement project, assuming that the City in fact made the policy decision to eschew repairs of any kind. It is not a matter of repaving several feet of a lane of traffic or realigning an intersection, for example. Although there are certainly claims surrounding this time and place for which the City would have discretionary function immunity due to the reconstruction project, I do not believe this is one of them.

[5] I would affirm the trial court's denial of summary judgment.